**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:07-cr-00235-LDG-PAL |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| HECTOR GARCIA, | |
| Defendant. | |

The defendant, Hector Garcia, moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion to grant a new trial is left to the discretion of the district court, however, "it should only be granted in exceptional circumstances

1   in which the evidence preponderates heavily against the verdict." *United States v. Pimental*, 654 F.2d

2   538, 545 (9th Cir. 1981).

3   **I. Factual Background and Procedural History**

4         At Garcia's trial, the government presented evidence that Garcia entered an Internet chat room,

5   where he initiated contact with another member with the username "EmlyP13."  A Yahoo user page

6   contained information about "EmlyP13," including her name, age, and the New York Yankees logo.

7   During the initial conversation with "Emily," Garcia asked for her age, sex, and location.  "Emily" told

8   Garcia that she was a thirteen-year-old female from Las Vegas. Garcia acknowledged that "Emily" was

9   a minor, but continued to chat online with her. "EmlyP13," however, was not a thirteen-year-old

10  female, but undercover Detective Tim Moniot, a member of the Internet Crimes Against Children task

11  force.  As part of his duties, Detective Moniot created the undercover persona "Emily" in order to

12  identify child predators.

13        Throughout the first online chat, Garcia asked "Emily" what she looked like, if she had a nice

14  "ass," if she had a boyfriend, and what size panties she wore.  He also asked "Emily" if she had ever

15  done "anything" with a guy, to send him a picture of her via e-mail, and to call him on the phone.

16  Garcia told "Emily" that he knew he could get in trouble for talking to a young girl in this manner.

17        After conducting numerous online chats over the course of several months and following a

18  period of six months in which no communications took place, Garcia and "Emily" resumed their

19  Internet chat.  Shortly thereafter, on August 24, 2007, Garcia raised the issue of meeting "Emily" in

20  person.  Garcia and "Emily" planned to go to a hotel room after meeting in a Las Vegas park on

21  September 20, 2007.  He asked her not to wear panties with her jeans, and added that it would be "hard

22  to stop" once they "do it."

23        At the agreed-upon time, Garcia drove to the park, circled a few times, and then parked in a lot

24  for a few moments.  He then circled the park again, left and re-entered, and ultimately parked near the

25  slides.  An FBI agent, posing as a decoy, waited on the swing-set where "Emily" said she would be

26

2

located.  Immediately after parking, Garcia was arrested and taken into custody.  He agreed to speak with Detective Moniot and admitted that he had gone to the park to meet "an underage girl."  Garcia stated that he chatted with "Emily" under the name "LVBICOCK" and acknowledged that he talked about having sex with her.  Furthermore, he admitted that he purchased condoms on his way to meet "Emily," but he was not sure if they would "go all the way."

On September 26, 2007, a federal grand jury indicted Garcia on one count of enticement and attempted enticement in violation of 18 U.S.C. § 2422(b).  Trial commenced on February 23, 2010, and the jury returned a guilty verdict on February 26, 2010.  On March 12, 2010, Garcia filed a timely motion for a new trial asserting that (1) the court violated his Sixth Amendment right by limiting his cross-examination of Detective Moniot, and (2) the court violated his Sixth Amendment right to counsel and to present a defense in closing arguments.

**II. Sixth Amendment Right to Cross-Examine Adverse Witnesses**

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal proceeding "to be confronted with the witnesses against him." *Del. v. Van Arsdall,* 475 U.S. 673, 678 (1986).  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.*  It does not follow that the Confrontation Clause prevents a trial judge from imposing limits on defense counsel's inquiry of the prosecution's witness. *Id.*  On the contrary, trial judges retain wide latitude in imposing reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Id.* at 678-79.  The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Id.* at 679 (emphasis in original).

The Ninth Circuit has identified three factors to consider in determining whether a defendant's right to cross-examination has been violated: (1) whether the excluded evidence was relevant; (2) whether there were other legitimate interests outweighing the defendant's interests in presenting the

3

evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness. *United States v. Ganoe*, 538 F.3d 1117, 1125 (9th Cir. 2008).

A.  The excluded testimony was irrelevant.

The right to present relevant evidence is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Relevant evidence is evidence that has a logical tendency to aid the trier of fact in the determination of an issue.  Fed. R. Evid. 401.  A defendant does not have a constitutional right to present irrelevant evidence.  *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000).  No violation of the Confrontation Clause occurs unless the restriction relates to an area of considerable relevancy, and the denial is prejudicial.  *United States v. Jackson*, 756 F.2d 703, 706 (9th Cir. 1985).

The conduct that § 2422(b) "criminalizes is persuading, inducing, enticing, or coercing illegal sexual activity—actions of the defendant alone." *United States v. Dhingra*, 371 F.3d 557, 561 (9th Cir. 2004).  A victim's willingness to engage in sexual activity is irrelevant, so long as the defendant's actions constitute the act of persuading, inducing, enticing or coercing a minor to engage in criminal sexual activity.  *Id.* at 568.  Moreover, criminal liability does not depend on whether the minor actually engaged in criminal activity, but whether the defendant sought such sexual activity from the minor. *Id.* at 561.

Garcia argues that the excluded evidence was relevant for two reasons: the cross-examination addressed, and was confined to, issues raised by the government on direct, and the line of questioning was probative of Garcia's intent. Garcia's counsel attempted to ask Detective Moniot what his actions were as "Emily," and whether he was the first one to bring up the idea of meeting in person. The government objected on the basis that Detective Moniot's intent in posing as "Emily" was irrelevant to Garcia's intent during the Internet encounters and meeting arrangements.  The court sustained the

4

government's objection on the grounds that the defense counsel's objections went to an entrapment defense,[1] which the defendant had not raised.

The Ninth Circuit has held that it is the defendant's intent alone that is relevant in determining criminal liability pursuant to § 2422(b). *Dhingra*, 371 F.3d at 561. Therefore, Detective Moniot's intent at the time "Emily" expressed willingness to meet Garcia was irrelevant. There was no error in limiting Detective Moniot's testimony regarding "Emily's" intent or actions establishing such.

B. Other legitimate interests outweighed Garcia's interests in cross-examining Detective Moniot's intent during the online chats.

Even if the testimony regarding Detective Moniot's intent in developing "Emily" as a target were relevant, the court may limit cross-examination that would confuse the issues or mislead the jury. Fed. R. Evid. 403. A defendant's right to cross-examination is violated where no other legitimate interests outweigh the defendant's interest in presenting the evidence. *United States v. Sua*, 307 F.3d 1150, 1153 (9th Cir. 2002).

Garcia claims that there were no legitimate government interests outweighing Garcia's interest in presenting the testimony at issue. He argues that the excluded line of questioning focused on elements explicitly enumerated in § 2422(b) and was probative of Garcia's intent to persuade, induce, or entice "Emily." Following the government's objection, defense counsel stated at sidebar that he wanted the jury to understand the context of the chats and show that it was the detective who brought up the idea of meeting Garcia. However, the chats were read during Detective Moniot's testimony, were admitted into evidence, and were available to the jury during deliberations. Thus, the jury was able to understand the context of "Emily's" statements as they related to Garcia's subsequent actions.

Furthermore, cross-examining Detective Moniot about the intent behind "Emily's" statements would have confused the jury because, as the court instructed, the focus is on the defendant's intent alone. Because Garcia did not assert an entrapment defense, "Emily's" statements and actions were

---

[1] The affirmative defense of entrapment contains two elements: government inducement of the crime and absence of predisposition on the part of the defendant. *United States. v. Gurolla*, 333 F.3d 944 (9th Cir. 2003).

irrelevant in determining whether Garcia attempted to persuade, induce, or entice her to engage in unlawful sexual conduct, and other legitimate interests outweighed Garcia's interest in eliciting the testimony.

      C.  <u>The exclusion of evidence left the jury with sufficient information to assess the credibility of Detective Moniot.</u>

The third prong for determining if a defendant's right to cross-examination was violated is whether the jury is otherwise in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue. *United States v. Salsedo*, 607 F.2d 318, 321 (9th Cir. 1979).

Garcia declined to address this issue in both his motion for a new trial and his reply to the government's response. Independently, the court concludes that Garcia was not denied effective cross-examination under this test. Despite limiting the scope of Garcia's counsel's questioning, the court permitted otherwise appropriate cross-examination of Detective Moniot as it related to Garcia. Defense counsel explored the role the detective played in the investigation, his training with respect to his undercover persona, "Emily," the way he preserved the chat transcripts, and his experience in similar cases.  Specifically, Garcia's counsel questioned the potential flaws in the investigation conducted by Detective Moniot, and whether the means by which the chats were preserved were subject to error or allowed for alteration of the text. Defense counsel challenged Detective Moniot's testimony regarding one of Garcia's interests on his Yahoo profile page and asked him about the lack of child pornography on Garcia's computers. Furthermore, defense counsel cross-examined the detective about the months-long gap in communications between "Emily" and Garcia before they restarted their conversations and arranged to meet.

In light of the foregoing, Garcia's Sixth Amendment right to cross-examine adverse witnesses was not violated. Evidence as to "Emily's" intent was irrelevant, there were other legitimate interests outweighing Garcia's interest in presenting the evidence, and the jury had sufficient information to assess Detective Moniot's credibility.

**III. Sixth Amendment Right to Counsel and to Present a Defense**

The Sixth Amendment guarantees to the accused in all criminal prosecutions the right to the assistance of counsel for his defense. *Herring v. New York*, 422 U.S. 853, 856 (1975). The right to the assistance of counsel has been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary fact-finding process. *Id.* at 858. The closing argument for the defense is a basic element of the adversary fact-finding process in a criminal trial. *Id.*

The constitutional right of a defendant to be heard through counsel includes his right to have his counsel make a proper closing argument on the evidence and the applicable law in his favor. *Id.* at 859. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). This is not to say that closing arguments in a criminal case must be uncontrolled or unrestrained. *Herring*, 422 U.S. at 859. The court is given great latitude in limiting the scope of closing arguments. *United States v. Birges*, 723 F.2d 666, 672-73 (9th Cir. 1984). The court may ensure that argument does not stray unduly from the mark, *Herring*, 422 U.S. at 862, and the court retains the power to preclude closing arguments on defense theories that are not supported by the evidence. *United States v. Miguel*, 338 F.3d 995, 1001 (9th Cir. 2003).

Garcia contends that the court committed structural error when it prohibited defense counsel from arguing his theory of defense in closing arguments.[2]  However, as the government submits, nothing in the record indicates that the court unduly restricted defense counsel's closing argument. In fact, on one occasion, defense counsel told the jury to "read the chats" and they would see that "Emily" never "backs down." When the government objected, the court permitted defense counsel to continue and did not restrict or limit defense counsel from arguing the point. Moreover, defense counsel had ample opportunity to argue that the government did not prove the requisite elements for a conviction

---

[2] The Supreme Court has found a "structural error" in a very limited class of cases.  *Neder v. United States*, 527 U.S. 1, 8 (1999).  Such error would include, complete denial of counsel, biased trial judge, racial discrimination in selection of grand jury, denial of self-representation at trial, and defective reasonable-doubt instruction.  *Id.*

1   pursuant to § 2422(b). Counsel noted the absence of child pornography on Garcia's computer, the six-

2   month delay in communications between Garcia and "Emily," and Garcia's statements that he did not

3   intend to pressure "Emily" to engage in sex if and when they met.

4        Garcia further claims that there is no basis in law for precluding defense counsel from arguing

5   that, based on the nature of Detective Moniot's responses to Garcia, the government failed to prove

6   that Garcia attempted to persuade, induce, or entice "Emily."  As previously noted, Detective Moniot's

7   intent, and actions reflecting it, are irrelevant to Garcia's intent to persuade, induce, or entice, and

8   therefore, his testimony was appropriately limited during closing arguments. Accordingly, Garcia's

9   Sixth Amendment right to cross examine or right to present a defense was not violated.

10  **IV. Even if the limitation on the cross-examination and closing argument constituted a Sixth
       Amendment violation, it was harmless error.**

11       Confrontation Clause errors are subject to harmless error analysis. *Van Arsdall*, 475 U.S. at

12  684. Certain constitutional errors may be "harmless" in terms of their effect on the fact-finding process

13  at trial. *Van Arsdall*, 475 U.S. at 681.  The Supreme Court has repeatedly reaffirmed the principle that

14  an otherwise valid conviction should not be set aside if, based on the whole of the record, the

15  constitutional error was harmless beyond a reasonable doubt. *Id*. Whether an error is harmless in a

16  particular case depends upon a host of factors, including the importance of the witness' testimony,

17  whether the testimony was cumulative, the presence or absence of evidence corroborating or

18  contradicting the testimony of the witness on material points, the extent of cross-examination otherwise

19  permitted, and the overall strength of the prosecution's case.  *Id*. at 684.

20       Here, even if the defendant suffered a Confrontation Clause violation, the error was harmless

21  beyond a reasonable doubt.  The evidence of Garcia's guilt is overwhelming.  He initiated contact with

22  "Emily" and was immediately aware of the fact that she was a thirteen-year-old girl.  When "Emily"

23  said she understood if he wanted her to "bounce off," Garcia, while acknowledging that he could get

24  in trouble, stated that it was OK for them to talk.  However, Garcia did more than just talk to "Emily."

25  He repeatedly called her "baby," "sexy," "cutie," and "hottie," and asked her what kind of underwear

26

she wore.  Garcia stated that he wanted to perform oral sex on her and that he wanted her to perform oral sex on him.  On numerous occasions, he asked "Emily" when he could meet her in person, and he told her that it would be "hard to stop" once they started having sex.  The government also provided evidence that the IP addresses used during the chats with "Emily" matched those of Garcia.  The IP addresses were located at Garcia's home address, his school, and his place of work.

In addition to the overwhelming evidence provided by the online chats, Garcia followed through with the plan to meet "Emily" when he arrived at a Las Vegas park.  Upon his arrest, Garcia consented to questioning by Detective Moniot.  The jury heard Garcia admit to chatting with "Emily" about sex, that he knew she was underage, that he traveled to meet her at the park, and that he brought condoms with him.

The court finds that, given the extensive evidence of Garcia's violation of § 2422(b), any error in limiting his cross-examination or closing argument was harmless.

**V. Conclusion**

THE COURT HEREBY ORDERS that defendant Garcia's motion for a new trial (#89) is DENIED.

DATED this _____ day of July, 2010.

_____
Lloyd D. George
United States District Judge

9